Niskayuna
v.
Albany.

THE OVERSEERS of the Poor of the town of NISKAYUNA *against* THE OVERSEERS of the Poor of the City of AL-BANY.

ON certiorari from the general sessions of the peace of the county of Albany. The Court below, on appeal, affirmed an order of two Justices, removing Gerrit Clute, his wife and three infant children, from the city of Albany to the town of Niskayuna.

*If it do not appear that one has gained a settlement in his own right, his settlement follows that of his father:*

On the hearing before the sessions, (March term, 1823,) the counsel for Niskayuna admitted that the grandfather of Clute, the pauper, had a settlement in Niskayuna, and re-lied upon showing that his father Jacob Clute, acquired, a settlement out of that town, and indeed, that he was actual-ly settled in Albany, by serving there as an apprentice ; or if not, that Albany had acknowledged him as a pauper of that city, by receiving, entertaining and supporting him in the almshouse of that city till he died.

*But a change in the settle-ment of the fa-ther, will not affect that of the son, if the father's settle-ment is obtain-ed after the emancipation of the son.*

*What shall amount to an emancipation.*

D. C. Groat, swore, that the father of the pauper died 5 or 6 years ago, aged about 70 years : the pauper, G. Clute, is now aged about 50 years.

*The grand-father had a settlement in N.: his son's settlement fol-lows the fa-ther's, and the son not having gained a set-tlement in his own right, tho grandson's is in the same place.*

The counsel of Niskayuna then offered to show the ap-prenticeship of the father, by parol. This was objected to, but admitted *de bene esse ;* and

To acquire a settlement by apprenticeship, the service must be under an indenture, or a deed, contract or writing not indented ; a parol binding is not sufficient.

The place of birth is, *prima facie,* the place of settlement ; but if the father's settlement be in another place, the settlement of the child follows his.

It appeared that at the Albany almshouse, certain books are kept in which the names of paupers, &c. are entered ; and also quarterly returns made to the corporation. To show that a pauper was settled at Albany, by being entered and recognized as a pauper of that city, the almshouse books being (as insisted) burnt, parol proof of their contents was offer-ed ; *held,* that admitting the books to have been burnt, parol was not the next best evidence but the quarterly returns should be produced.

Groat stated, that the father was sworn before him and another, as magistrates, with a view to his removal as a pauper; that his evidence was reduced to writing, but where the affidavit is now, he does not know; that the father then swore, that he served one Goervey (since dead) upwards of two years, as an apprentice, in Albany, and then ran away and returned to his father's, who also drove him away, after which he shifted for himself; does not know that he spoke of having seen any indenture, but he said he was bound by his father to Goervey. He also swore, that he was born upon Mills' Island, near the city.

N. Bassett, a constable of Niskayuna in 1812, swore, that during that year, on an order of removal, he conveyed the father from Niskayuna to the almshouse in Albany, where, as the witness was afterwards informed by the superintendent and others, he died.

Bassett's testimony was objected to as inadmissible, but received *de bene esse.*

D. Osborn swore, that in the fall of 1813, he saw the father in the almshouse, and soon after heard that he died there.

J. Strong swore, that he saw the name of Jacob Clute, the father, entered as the name of one of the paupers in a book kept at the almshouse. This was since 1815.

Evidence was given of a declaration of Wendell, the superintendent of the almshouse in 1815, that there had been a fire there by which the records were burnt up; that Wendell is since dead.

George W. Welsh, superintendent of the almshouse at the time of the hearing, produced a book, which he swore he received from the brother of Hewson, the late superintendent, (deceased,) and which purported to be a book of the almshouse, and to contain the names of paupers belonging to that establishment, from 1806 to 1814, inclusive, in which the name of Jacob Clute was not to be found; that there is no other general book in which the names of paupers are

κept; that he makes a quarterly return to the Common Council containing the names of all the paupers remaining in the almshouse, and opposite the name of each pauper, is stated the age of the pauper, the time of admittance, death, &c.; that he is informed it was customary for his predecessors to make these returns, as he now does; and the present corporation law requires this to be done. At the June term, 1823, the sessions affirmed the order.

The counsel for Niskayuna admitted that Clute, the pauper, was married about 30 years ago, at Guilderland, (then Watervliet,) and had several children.

*J. V. N. Yates,* for the plaintiffs in error. The father's service for two years, as an apprentice, in Albany, is established. Parol evidence was admissible under the circumstances of the case. (*Jackson* v. *Root,* 18 John. Rep. 60, 73. 1 Phil. Ev. 176, 178. *Rex* v. *Long Buckby,* 7 East, 45. Burr. Set. Cas. 151. 1 Const, 490. 1 John. Cas. 488, per Spencer, C. J. 1 Caines' Cas. Err. 27. 10 John. Rep. 377. *Giles* v. *Baremore,* 5 John. Ch. Rep. 550.) The lapse of time, the death of Goervey and of Jacob Clute, and the fire at the almshouse, have deprived us of any other proof than what we have given. *Rex* v. *Morton,* (4 M. & S. 48,) is in point. The father has removed to Albany, upon his evidence of having served an apprenticeship; the removal was acquiesced in, and became conclusive upon them. (3 Burns' J. 597, and the cases there cited.) The service would confer a settlement, though not under an indenture. (Van Schaick's ed. of Colonial Laws, 752.) Service under defective indentures gains a settlement. (*Overseers of Hudson* v. *Overseers of Taghkanac,* 13 John. Rep. 245.) But Albany recognized and supported the father as their pauper; and in this view, no matter how he came there. (*Rex* v. *Wakefield,* 5 East, 335. *Same* v. *Chadderton,* 2 East, 27. *Same* v. *Chatham,* 8 East, 498. *Fort Ann* v. *Kingsbury,* 14 John. Rep. 367. *King* v. *Butler,* 15 John. Rep. 281.) The order need not have been produced. It was not relied upon as binding in itself, but merely to show the character in which the pauper was received. Parol proof was competent for this purpose. (1 Phil. Ev. 218,

ALBANY,
Feb. 1824.

Niskayuna
v.
Albany

219.  *Livingston* v. *Delafield*, 1 John. Rep. 523.  *King*
v. *Butler*, 15 John. Rep. 281.   *Rex* v. *Wakefield*, 5 East,
335, 6.)   But the order of removal was probably destroyed
by the fire in the almshouse, which renders parol proof ad-
missible.  (*Jackson* v. *Neely*, 10 John. Rep. 374.)   The de-
clarations of the superintendent of the almshouse, were good
evidence of the destruction.  (Peak's Ev. 74.  *Fairlie* v.
*Hastings*, 10 Ves. 127.)   No objection was made for want
of notice to produce the order.  But the nature of the proceed-
ing was a sufficient notice that the order would be required.
(*Jolley* v. *Taylor*, 1 Campb. Rep. 143.  *How et al.* v. *Hall*,
14 East, 274.  *Bucher* v. *Jarratt*, 3 B. & P. 143.)

Nor was it necessary to produce the quarterly returns.
They were mere private papers.

To make the settlement of the grandfather available, it
should be shown that he was not only settled in Niskayuna,
but that he was settled there at the time of his death.

The son's settlement followed that of the father.  His be-
ing married 30 years ago, and emancipated does not vary
the case, unless he acquired a settlement in his own right.

*J. E. Lovett*, for the defendant in error, contended,

1. That the proof of the indentures and service as ap-
prentice, was inadmissible.  (*Case of The Inhabitants of
Bilton*, 1 East, 15.   *Rex* v. *Inhabitants of Warley*, 6 T.
R. 534.  4 Com. Dig. Evidence, A. 3, 4.  3 Bl. Com. 368.
1 Phil. Ev. 167, 173, 347.  *Carey* v. *Campbell*, 10 John.
Rep. 363.   *Rex* v. *Inhabitants of Eriswell*, 3 T. R. 708,
per Grose, J.  Burr. Sett. Cas. Case No. 94, 102, 104, 173,
203, 227, 262.  2 East, 28, per Ld. Kenyon, C. J.  4 Burn.
J. 403.  Ld. Raym. 1117.)

2. Failing to show a settlement by indenture and appren-
ticeship, it cannot be converted into a hiring and service,
within the colonial law.  (4 T. R. 770.  4 Burn, J. 418,
419, 752.  Burr. Sett. Cas. No. 173, 203.  1 Bl. Com. 364.
4 Burn. J. 283.)

3. There is no legal proof that the father was removed to
Albany by the order of removal.  (Com. Dig. Evidence, A.
4, and most of the authorities cited to the first point.   1
Phil. Ev. 338.)

4. If the father was entertained as a pauper of Albany, it communicated no settlement to the son, who was several years before emancipated (5 T. R. 586. 3 T. R. 356. 4 Burn, J. 232. 1 Bl. Com. 363, note.)

5. If the almshouse books were destroyed, evidence should have been given from the quarterly returns. (2 Caines' Rep. 106. 6 T. R. 247. Burr. Sett. Cas. No. 93, 197, 251. 1 East, 527. 5 T. R. 670.)

*Curia,* per SAVAGE, Ch. J. The question is, where was the last legal settlement of Gerrit Clute, the pauper?

It is admitted that his grandfather was settled in Niskayuna.

It does not appear from the return, that the pauper ever gained a settlement in his own right, any where. We must then look back and inquire, where was the settlement of his father? If we admit the parol evidence which was received by the sessions, it appears that Jacob Clute, father of the pauper, was born upon Mill's Island. In what town this island was situate, at that time, does not appear; nor is it, at present, material. The place of the birth is, *prima facie,* evidence of the place of settlement. It remains so, till the settlement of the father is ascertained, and then the settlement of the child is the same as that of the father. (*Delavergne* v. *Noxon,* 14 John. Rep. 334. *O. of Vernon* v. *O. of Smithfield,* 17 id. 91.) The father of Jacob Clute was settled in Niskayuna; and the birth of the latter upon Mills' Island did not give him a different settlement. This circumstance, then, does not relieve Niskayuna.

It is next contended that he served an apprenticeship for more than two years in Albany. To gain a settlement in this manner, he must have been bound an apprentice or servant *by indenture, or by deed, contract or writing not indented ;* and in consequence of such binding, have served a term not less than two years. (1 R. L. 279.)

The testimony does not show that Jacob was bound in either of these ways. There is no evidence, that any written instrument ever existed, binding him to Goervey. For aught that appears, the binding may have been by parol, in

ALBANY,
Feb. 1824.

Niskayuna
v.
Albany.

ALBANY,      which case no settlement would be gained. (*Rex* v. *Inh. of*
Feb. 1824.    *Abingdon*, Burr. Sett. Cas. 292.)  The  evidence admitted
Niskayuna    by the sessions was certainly too loose ; but in the view
v.           which I have taken of the case, it is not necessary to par-
Albany.      ticularize. . Jacob Clute had a settlement in Niskayuna, be-
cause his father had.   He did not acquire a different settle-
ment by birth, or by apprenticeship.

It is contended, however, that he was acknowledged as a
pauper of Albany, in 1812 ; that he was received on an or-
der of removal from Niskayuna, and supported in the alms-
house, till 1815, when he died there.   These facts are prov-
ed by parol, but the books produced disprove them ; and
the appellants have not brought forward the best evidence
in their power.   They might have produced the quarterly
returns of the superintendent, if they supposed that any of
the books were destroyed.

They omitted to give notice to produce the order of re-
moval, and were, therefore, not entitled to give parol proof
of its contents.

But even if there were no objection to the competency of
the evidence, the facts proved by Niskayuna would not
make out a settlement of Gerrit Clute in Albany, by show-
ing that his father had one there in 1812.   The pauper is
now about 50 years of age ;  in 1812, he must have been 39.
He had been long before emancipated, and his settlement
did not follow that of the father, though the latter may af-
terwards have gained one in Albany.

I am, therefore, of opinion, that the order of the sessions
be affirmed.

Judgment of affirmance.