GEORGE H. STILLWELL, AS SUPERINTENDENT OF THE POOR OF SCHUYLER COUNTY, APPELLANT, *v.* MICHAEL A. KENNEDY, AS OVERSEER OF THE POOR OF THE CITY OF ELMIRA, RESPONDENT.

*Service of notices on county superintendents of the poor under sections 59–62 of 1 Revised Statutes, pages 628, 629 — personal service is not necessary to enable the town, city or county to contest its liability.*

Upon an appeal from a judgment dismissing the complaint, entered on a nonsuit, it appeared that a written notice, dated October 7, 1886, was given by the plaintiff to the defendant informing him that one Charles S. Ayers was a pauper, and was being supported by the county of Schuyler, and that the plaintiff claimed that the pauper was a resident of and chargeable to the city of Elmira. The written reply of the defendant, dated October 19, 1886, referred to the plaintiff's notice by its date, acknowledged its receipt and denied that the pauper had ever resided at the city of Elmira, and, in effect, denied the liability of the city for his support.

*Held,* that the notice and reply were each sufficient as to form and in substance to enable the parties to this action to contest the question as to which was liable, under the provisions of sections 59, 60, 61, 62 of 1 Revised Statutes, 628, 629, for the support of the pauper.

The plaintiff, who received the reply through the mail in due time, insisted that it was insufficient to enable the defendant to contest the question of liability, because it was not personally served upon him.

*Held,* that as sections 60 and 61 of the statute simply provide that the county superintendent, upon whom the notice is served, shall, by a written instrument, *notify* the superintendent from whom it was received, that he denies the liability of his town, city or county; and as the statute is silent as to the mode in which the written instrument shall be put into the possession of the officer serving the notice of claim, and as the notice given in this case came into the plaintiff's hands in due time, and he retained it, without objection, the notice given was sufficient to enable the defendant to contest the alleged liability of his city.

*Rathbun* v. *Acker* (18 Barb., 393); *McDermott* v. *Board of Police* (25 id., 635); S. C. (5 Abb., 422); *People ex rel. N. B. & C. R. R. Co.* v. *Lockport and Buffalo Railroad Company* (13 Hun, 211) distinguished.

The testimony given upon the trial, considered by the General Term and held not to have justified the trial court in holding, as a matter of law, that the said Charles S. Ayers had not a legal settlement in the city of Elmira.

APPEAL by the plaintiff from a judgment of nonsuit directed by the court at the Schuyler Circuit March 7, 1888.

*Cole Brothers,* for the appellant.

*H. H. Rockwell,* for the respondent.

FOLLETT, J.:

Appeal from a judgment dismissing the complaint, with costs, entered on a nonsuit and heard in this court on a case which contains all of the evidence.

The parties agree that between April 1, 1886, and January 8, 1887 (the date this action was begun), the plaintiff necessarily expended seventy-six dollars in supporting Charles Sumner Ayres, a pauper, for the recovery of which sum, with interest, this action was begun.

Two questions are involved in this appeal: (1.) Was the notice given by the plaintiff and the reply given by the defendant sufficient to enable the parties to litigate the question as to whether the county of Schuyler or the city of Elmira was liable for the support of the pauper? (2.) Is the evidence sufficient to sustain the ruling that, as a matter of law, the pauper was not settled in and chargeable to the city of Elmira?

The defendant contends that the written notice (dated October 7, 1886) given to him is insufficient to enable the plaintiff to maintain this action, and the plaintiff contends that the written reply (dated October 19, 1886) received by him through the mail is insufficient to enable the city of Elmira to contest its liability to pay the sum expended in supporting the pauper. These questions should be determined before considering the case on the merits.

The written notice given by the plaintiff to the defendant informed him that Charles S. Ayers was a pauper, was being supported by the county of Schuyler, and that the plaintiff claimed that the pauper was a resident of and chargeable to the city of Elmira. The written reply of the defendant referred to the plaintiff's notice by its date, acknowledged its receipt and denied that the pauper had ever resided at the city of Elmira; and, in effect, denied the liability of the city for his support. The notice and reply are sufficient in form and in substance to enable the parties to this action to contest the question, as to which is liable for the support of the pauper. (1 R. S., 628, 629, §§ 59, 60, 61, 62; *City of Lynn* v. *City of Newburyport*, 87 Mass. [5 Allen], 545; *Inhabitants of Wenham* v. *Inhabitants of Essex*, 103 id., 117; *Inhabitants of Shelburne* v. *Inhabitants of Buckland*, 124 id., 117.)

The reply was received by the plaintiff through the mail in due

time, but he insists that it is insufficient to enable the defendant to contest the question of liability, because it was not personally served. The plaintiff received the reply in time, and retained it without objection. The sixtieth and sixty-first sections of the statute above referred to provide that the officer receiving the notice shall, unless he concedes the liability of his town, city or county, within thirty days after the service of the notice, by a written instrument, under his hand, notify the county superintendent from whom such notice was received, that he denies the allegations of improper enticing or removal, or of the liability of his town, city or county for the support of the pauper. (Sec. 60.) The word "service" is not used in this connection, and the statute being silent as to the mode in which the "written instrument" shall be put into the possession of the officer serving the notice of claim, and the notice having come into the plaintiff's hands in due time, and he having retained it without objection, the notice given was sufficient to enable the defendant to contest the alleged liability of his city. In arriving at this conclusion we have not overlooked the cases (*Rathbun* v. *Acker*, 18 Barb., 393; *McDermott* v. *Board of Police*, 25 id., 635; S. C., 5 Abb., 422; *People ex rel. N. B. & C. R. R. Co.* v. *Lockport and Buffalo R. R. Co.*, 13 Hun, 211), holding that when a notice must be given as a condition precedent to divesting a person of his property or of his office, that personal notice is required. Statutes under which a person may be deprived of his property or office, by a procedure not known to the common law, are construed favorably to the person attacked, and all the statutory steps must be exactly taken. Likewise, statutes which deprive a person or municipality of the right to contest in the courts alleged liabilities, must be construed favorably to the person or corporation seeking to contest such alleged liability.

Charles Sumner Ayers was the son of James C. and Sally Ayers, who were residents of the town of Reading, in the county of Schuyler, at the date of his birth, February 28, 1857. From birth to April 13, 1867, he resided with his parents at said town, at which date his father died. May 3, 1870, the surrogate of the county of Schuyler appointed his mother the general guardian of his person and estate. He continued to reside with his mother in this town until December 1, 1870, when she intermarried with W. D. Duncan. From that date he resided with his mother and stepfather in said

town until July, 1872, when Mr. and Mrs. Duncan removed to Ottawa, Kansas. Shortly before his parents went west, and in January, 1872, Charles S. Ayers was attacked with cerebro spinal meningitis, which left his right side paralyzed and his power of speech greatly impaired. From that time to the present he has been physically and mentally feeble, and unable to work. When Mr. and Mrs. Duncan went to Kansas, they left the boy with an uncle, who resided in Ulysses, Tompkins county, where he remained until October, 1873 (his mother paying for his board), when he went to Kansas, where he resided with Mr. and Mrs. Duncan until they removed, in February, 1878, from Kansas to the city of Elmira, where they have ever since resided.

It is very clear that, by the removal of the mother and the son to Kansas, they lost their residence in this State and became residents and citizens of the State of Kansas. When Mr. and Mrs. Duncan removed to the city of Elmira, the boy was not of age, but became of age February 28, 1878. The boy did not go to Elmira with his parents, but was left with one George Burris at Iola, Kansas, and in the summer of 1879 followed his parents to Elmira. The last of the money which the boy derived from the estate of his father was drawn from the county treasurer of Schuyler county December 24, 1877, and, presumably, had been exhausted in his support. He was without property or health, and had little mental capacity. Before he became of age, and when he became of age, he was a poor person. (*Hutchins* v. *Thompson*, 64 Mass. [10 Cush.], 238.) Until a poor person acquires a settlement in his own right, his settlement is that of his father or mother. (1 R. S., 621, § 29, sub. 4; *Niskayuna* v. *Albany*, 2 Cow., 537.) When the mother became a resident of the city of Elmira, and the boy followed her to that place, a residence and settlement were initiated. He never became a State pauper. (Laws 1873, § 1, chap. 661.)

From the summer of 1879 until August, 1881, he stayed part of the time with his parents at Elmira, and part of the time with relatives in the counties of Schuyler and Tompkins. In August, 1881, he went to Saville, Ohio, where he remained until July, 1884, when he returned to his parents at Elmira, in which city he remained until November, when he voted in that city at the general election. It does not appear what he did or how he was supported while he

was in Ohio; nor does it appear that he did anything evincing an intent (if he was capable of forming one) to become a resident of that State. Assuming that he was capable of forming an intent as to his residence, we think the evidence shows that he understood that his home and residence were at Elmira. From July, 1884, he traveled in the counties of Chemung, Schuyler and Tompkins, peddling books, notions and such things as he could carry in his pockets, he being unable to carry a bundle of any size. He stayed with his parents a few weeks at a time, and at other times with different relatives residing in the counties of Chemung, Schuyler and Tompkins. He kept his clothes in a trunk at his mother's, and he swears that his home was with her at Elmira. In December, 1885, his mother hired Milton Raymond, of the town of Reading, Schuyler county, to board him at a price agreed upon, but afterwards refused to pay; and in April, 1886, he became a charge upon the public. His trunk remained at his mothers, at Elmira, until the spring of 1887, when she sent it to him.

The court having nonsuited the plaintiff, he is entitled to have this court take the view of the testimony which is most favorable to him; but this we have not strictly done, having stated such facts as do not seem to be controverted. Under the testimony the court erred in holding, as a matter of law, that Charles S. Ayres had not a legal settlement in the city of Elmira.

For this error the judgment must be reversed and a new trial granted, costs to abide the event.

MARTIN and KENNEDY, JJ., concurred.

Judgment reversed on the exceptions and new trial granted, with costs to abide the event.