(5 Misc. Rep. 105.)

### In re WILTSE et al.

(Greene County Court. September, 1893.)

1. EVIDENCE—PRESUMPTION FROM POSTING LETTERS.

Where five letters from different senders to the same person are duly posted at different places, the presumption that they reached the person to whom they were addressed will overcome the testimony of such person that he did not receive them.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—PRESENTING CLAIMS BY MAIL.

Sending a claim to an assignee by mail is a sufficient presentation, under the general assignment law, as such law does not provide how claims shall be presented.

3. SAME—RESTITUTION BY CREDITORS—POWER OF COUNTY COURT.

In a proceeding in the county court by creditors to compel an assignee to account, such court has power, at the instance of the assignee, to amend a decree of distribution theretofore made, and to compel creditors who were paid under it to refund so much as they received in excess of their proper shares.

Proceeding under an assignment for the benefit of creditors made by Wiltse & Fromer to Michael Lackey, Jr. Guilford Hasbrouck, Forsyth & Wilson, Van Deusen Bros., and George W. Yerks & Co., creditors of the assignor, ask for an accounting from the assignee, and the assignee asks for an amendment of a decree of distribution theretofore made, and for a redistribution. The application to open the decree, and for redistribution, was opposed by A. S. Staples, J. W. Matthews & Co., and others, creditors who had been paid under the decree. Granted.

Jennings & Chase, for the assignee.

Howard Chipp, Jr., for petitioner Guilford Hasbrouck.

P. & C. F. Cantine, for petitioners Forsyth & Wilson and Van Deusen Bros.

Breinner & Newcomb, for petitioners Geo. W. Yerks & Co.

G. R. Adams, for A. S. Staples and others.

F. H. Cassidy, (Jonathan Deyo, of counsel,) for J. W. Matthews & Co. and others.

SANDERSON, J. On the 2d day of September, 1891, Clarence L. Wiltse and John M. Fromer, residing at Hunter, Greene county, as copartners under the firm name of Wiltse & Fromer, doing business at Hunter, executed a general assignment for the benefit of their copartnership creditors to Michael Lackey, Jr. On the 3d day of September, 1891, said Clarence L. Wiltse and John M. Fromer, as copartners and individually, executed an assignment for the benefit of the firm creditors, and of the creditors of each of them. The assignment which bears date September 2, 1891, was recorded in Greene county clerk's office September 3, 1891, and the assignment bearing date September 3, 1891, was recorded at the same place September 4, 1891. The inventory was filed on the 21st day of September, 1891, and thereafter a bond of the assignee was given, and Michael Lackey, Jr., entered upon the discharge of his duties as assignee. Pursuant to an order of the county judge, the assignee published a notice for creditors to present their claims, and the time

given in the notice for creditors to do so expired December 30, 1891. On the 13th day of October, 1892, the assignee presented his peti-tion for a final accounting. A citation was issued, returnable No-vember 28, 1892, and on the last-mentioned day a decree was made for the distribution of the fund in the hands of the assignee, amount-ing to the sum of $9,884.90, among the creditors mentioned in the citation, or who appeared on the hearing. The assignee, since that time, has paid out all, or nearly all, the funds, as he was required to do by the decree. On the 28th day of February, 1893, Guilford Hasbrouck and the firms of Forsyth & Wilson and Van Deusen Bros. presented their several petitions, in writing, stating that they were creditors of the firm of Wiltse & Fromer; that they had presented their claims to the assignee within the time required by law; that no citation had been served upon them, or either of them; and that no part of their claims had been paid by the assignee. The prayer of their petition asked that a citation issue to said Michael Lackey, Jr., as assignee, requiring him to show cause why he should not render an account of his proceedings as assignee, and pay the peti-tioners their claims, or a just proportion thereof. A citation was issued upon each petition filed, returnable on the 8th day of March, 1893. On the return day the hearing was adjourned until the 21st day of April, 1893. On the 20th day of March, 1893, the assignee presented his petition setting up the proceedings which had been commenced by the creditors above named, and also stating that there were other persons, claiming to be creditors of Wiltse & Fromer, who had not been cited on the final accounting. The peti-tion asked, among other things, that a citation issue to all persons interested in the estate of Wiltse & Fromer to show cause why the claims of the creditors mentioned in the petition should not be al-lowed by said assignee, the decree made on the 28th day of Novem-ber, 1892, amended, a redistribution of the funds charged to the assignee in his account made, so as to include the creditors who had not been cited on the final accounting, and why judgment should not be entered against the several persons, firms, and cor-porations, creditors of Wiltse & Fromer, who had been overpaid by the assignee, for the amount of such excess, respectively. A citation was thereupon issued, returnable on the 21st day of April, 1893. These several proceedings were all heard at the same time, and the evidence taken made applicable to each of them. On the hearing, F. & M. Herbs and George W. Yerks & Co., creditors of Wiltse & Fromer, who had not been served on the former account-ing, appeared, no one objecting, and proved their claims.

The evidence of Guilford Hasbrouck shows that he is a creditor to the amount of $102.48. On the 11th day of September, 1891, the assignee wrote to Mr. Hasbrouck to "forward statement of accounts, Wiltse & Fromer," due him. On the same day a statement of the account of Hasbrouck was made out, verified, inclosed in an envelope, directed to the assignee at his post-office address, and deposited in the post office at Rondout, where Hasbrouck resided. On one corner of the envelope was Mr. Hasbrouck's name, with a request that it be returned to him if not delivered within 10 days. On the 7th day

of April, 1892, the assignee again wrote to Hasbrouck, requesting him to send to the writer a verified statement of his account against Wiltse & Fromer, or a duplicate of the original, if he had sent one. The letter further says: "I expect, soon, to render a partial accounting and distribution to creditors on the same, of all of which you will receive due and timely notice." A new statement of the account was made out, and, without being verified, inclosed in an envelope directed to the assignee, with request to return as before, and deposited in the post office. Neither of these letters were returned to Mr. Hasbrouck. The assignee denies that he received the verified account, but thinks he received the unverified one. He does not know what has become of the one he did receive. The firm of Forsyth & Wilson proved their account to the amount of $567.57. Under date of September 11, 1891, the assignee wrote them to "forward statement of accounts, Forsyth & Wilson," due them. September 17, 1891, Forsyth & Wilson inclosed a verified statement of their account in an envelope directed to the assignee at his post-office address, having the firm name and address in one corner of the envelope, and a return notice, and deposited it in the post office. The witness afterwards qualified his testimony by saying that he is only able to testify that the letter was put in the post office because it was his usual custom to send letters by some one to the post office. This letter was never returned. The firm of George W. Yerks & Co. are creditors to the amount of $302.57. Their place of business is at Albany, N. Y. On the 12th of September, 1891, a verified statement of their account was made out, inclosed in an envelope addressed to the assignee at his post-office address, with the firm name of George W. Yerks & Co. on one corner of the envelope, and notice to return in five days, and mailed. The bookkeeper testified that he mailed this letter in the usual way. Two or three times a day the letter carrier comes and takes the mail, and two or three times a day it is sent by the clerk. The firm of F. & M. Herbs, doing business at Hudson, N. Y., are creditors to the amount of $74.68. During the first week in January, 1893, a verified statement of their account was inclosed in an envelope addressed to the assignee, as in the other cases, with a request that it be returned to F. & M. Herbs, Hudson, N. Y., if not delivered in 10 days, and deposited in the post-office mail box near their store. The firm of Van Deusen Bros., doing business at Kingston, N. Y., are creditors to the amount of $777.80. On September 11, 1891, they received a postal from Michael Lackey, Jr., to the same effect as the one received by Guilford Hasbrouck on the same day. A verified statement of their account was made out, inclosed in an envelope directed to Michael Lackey, Jr., at his post-office address, with directions to return to Van Deusen Bros. if not delivered. This letter was put in the box with the general mail on the 14th of September, 1891. One of the employes was instructed to take it to the post office, but which one, the witness had forgotten. This letter was never returned. The assignee denies that he has ever received any of the above-mentioned letters containing claims, except that of Guilford Hasbrouck, as hereinbefore stated. The question of fact to be de-

termined is whether these claims ever reached the hands of the assignee.

In Abbott's Trial Evidence, (at page 291,) the rule as to the presumption arising from depositing letters in the post office is thus stated:

"Evidence that a letter was duly mailed in the post office, or government letter box, or deposited in the box or other place where the person addressed was accustomed to have his letters received, will sustain an inference that he received it, even though he testify that he did not."

The cases cited in the note seem to sustain this proposition. So, also, 1 Greenl. Ev. § 40:

"If a letter is sent by post, it is presumed, from the known course in that department of the public service, that it reached its destination at the regular time, and was received by the person to whom it was addressed, if living at the place, and usually receiving letters there. So, where a letter was put into a box in an attorney's office, and the course of business was that a bell man of the post office invariably called to take the letters from the box, this was held sufficient to presume it reached its destination."

In Hetherington v. Kemp, 4 Camp. 193, where a letter was placed on a table where letters were usually placed to go to the post office, the court held that this would be sufficient, if it were proved that they were usually carried to the post office. We cite upon this point Howard v. Daly, 61 N. Y. 362, 366; Hastings v. Insurance Co., 138 N. Y. 473, 34 N. E. Rep. 289.

Each one of the envelopes containing a claim, and mailed to the assignee, had the name of the sender, with a request to return if not delivered within a designated number of days. The known practice of the post-office department to return such letters, if not delivered, is a circumstance of considerable importance. In the case of two of the above-named creditors, viz. Guilford Hasbrouck and Van Deusen Bros., the amount of their claims correctly appears upon the inventory taken by the assignee. The books of the assignors were in such a state of confusion that no information could be obtained from them as to the amount due each creditor, or, with any certainty, as to the names of the creditors. The assignee's sources of information in making out the schedule of liabilities were the verbal statements of the assignors, and those of the creditors. In view of the facts that appear in evidence, it is much more likely that the amount of indebtedness in the two above-mentioned cases was taken from the sworn statements sent to the assignee, than from the memory of either of the assignors. The amount mentioned in the schedule, and the amount claimed, agree to a cent. The assignee does not deny that he received a statement of his claim, made by Hasbrouck, but he does not produce it, and says he does not know what has become of it. Similar carelessness may have existed in the other cases. It is much easier to believe that the assignee is in error than that none of these letters ever reached the person to whom they were addressed. The denial by the assignee that he received these letters simply makes a case of conflicting evidence. In Wall's Case, L. R. 15 Eq. 18, 5 Moak Eng. R. 686, 690, Malins, V. C., remarks:

"I may say, first of all, that I think there would be very considerable danger, where a letter is proved to have been duly posted and duly directed, in relying upon the unsupported statement of a person who, wishing to get rid of what he finds to be a burden, says that he never received it; and any such evidence, in my opinion, ought to be received with the greatest amount of caution."

The case in hand is stronger than those which have been cited, for here we have five letters, not one of which, it is claimed, reached the person to whom they were addressed. Neither were any of them returned to the sender, as requested on the envelope in case of a failure to deliver. Relying upon these principles of law, and the preponderance of the evidence, I find, as a matter of fact, that the assignee received each one of the letters sent him, in due course of mail.

It is contended, however, that presentation of claims by letters sent through the mail is not a compliance with the statute. Section 4 of the general assignment act provides that the county judge may authorize the assignee to advertise for creditors to present to him their claims. Nothing is said as to where the claims are to be presented, nor in what manner the presentation is to be made. The similarity of this statute to the one regulating the settlement of estates of decedents is quite striking, and the reference to it in the body of the general assignment act (see section 20, subd. 9) renders it a proper guide in the interpretation of analogous provisions in the assignment act. 2 Rev. St. marg. p. 88, § 34, provides that an executor or administrator may insert a notice in a county paper, requiring all persons having claims against the deceased to exhibit the same to such executor or administrator at the place of his residence or business, to be specified in such notice, at or before the day therein named. Sections 34 and 35, following the above, speak of such claims as having been presented. So that there is no essential difference between the words "exhibiting" and "presenting," as used in the statute. In Gansevoort v. Nelson, 6 Hill, 389, the court says "there is nothing in the statute which necessarily requires a personal interview between the claimant and the executor;" and, again, it says the presentation may be done "through an agent, by a written communication, or in any other way which deals fairly with the executor, and the interests which he represents. If the presentation is made by letter, the executor is bound to deal ingenuously with the creditor." This interpretation of the statute is the one used in textbooks upon this subject. Dayt. Sur. (3d Ed.) 384; Bish. Insolv. (2d Ed.) 389; McClel. Sur. Pr. (2d Ed.) 441. In statutes which require service of papers or notice to be given that will deprive a person of property or office, personal service is required. Stillwell v. Kennedy, 51 Hun, 114, 5 N. Y. Supp. 407. But neither the language of the statute nor the reason of the case requires this interpretation here. The assignee did not regard personal service necessary in the presentation of claims. In his postal cards which he sent out, he asks creditors to "forward" their claims. A claim sent by mail would certainly be complying literally with his request. In his letter of April 7, 1892, to Mr. Hasbrouck, the as-

signee requested him "to send" a verified statement of his account, or a duplicate of the original, if he had "sent" one. He. also promises his correspondent due and timely notice of the accounting and distribution soon to be had. A sending by mail is all that the writer contemplates. He invites this method of presentation by his correspondence, and waives personal service, even if the statute required it, which he had a right to do. His promise to give notice of the accounting is undoubtedly binding upon him. In substance, it was an admission that Hasbrouck had a recognized claim, and it tended to allay any fears the latter might have that his claim had not been duly presented. The proceedings upon the accounting are a bar only (1) to creditors who appeared; (2) to creditors who did not appear after having been duly cited; (3) or those who did not present their claims after due advertisement. See General Assignment Act, § 20, subd. 5. In analogy to the statute for the settlement of decedents' estates, the citation for a final accounting should be served on all creditors who have presented claims up to the time of issuing the citation, whether the presentation was made before or after the time limited in the notice for the presentation has expired. Field v. Field, 77 N. Y. 294. There is nothing in the statute which requires a different interpretation in the one case from what it does in the other. The claim should be duly presented, and that is all that is required to entitle a creditor to notice of the accounting. Useless distinctions should not be multiplied where the language of the statute is so nearly the same. It would not, however, be a correct rendering of the statute to say that all those whose names appear upon the inventory as creditors are entitled to notice of the final accounting, whether they have presented their claims to the assignee or not. The statute provides that, if the time limited by due advertisement for presentation of claims has expired before the issue of the citation, creditors who have not duly presented their claims need not be served, and upon performance of the decree the assignee is entitled to his discharge, as against creditors who have not presented their claims after due advertisement. See General Assignment Act, §§ 13, 20; In re Bailey, 58 How. Pr. 446. It follows from what has been said that the application of the creditors for an accounting by the assignee should be granted.

The assignee asks that the decree made in November, 1892, be amended, and the creditors who were paid under it be made to return to him a portion of the money they received, and that all the creditors who are entitled to share in the fund may receive a just proportion. On the other hand, it is claimed that this court has no power to make such an order. The very broad and general powers given to the county court by section 25 of the general assignment act make it, in substance, a court of equity, in all matters relating to the trust, and any matters involved therein. In re Underhill, 117 N. Y. 471, 478, 22 N. E. Rep. 1120. Whatever a court of equity, or a court having general jurisdiction, could do under similar circumstances, the county court may do in this case. The right of restitution, in proper cases, has long been recog-

nized as common law. Numerous provisions have been made in the Code of Civil Procedure for the application of this principle in almost every conceivable case where justice and right call for its exercise. See sections 445, 1005, 1216, 1292, 1323, 2142, 2263, 3058. The remedy by action, in this class of cases, still survives. Haebler v. Myers, 132 N. Y. 363, 30 N. E. Rep. 963. Whoever has money in his hands, which, in good conscience and of right, belongs to another, is liable to an action for its recovery by the person who ought to have had it. Hovey v. Elliott, 118 N. Y. 124, 142, 23 N. E. Rep. 475. By section 724 of the Code of Civil Procedure, the court may "relieve a party from a judgment, order or other proceeding taken against him, through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding." A similar provision exists for relieving from decrees in surrogates' courts. Code Civil Proc. § 2481, subd. 6. But, independent of the provisions of the Code, the power of courts to control or open their own judgments is inherent in the very nature of their constitution. Hatch v. Bank, 78 N. Y. 487; Vanderbilt v. Schreyer, 81 N. Y. 646; Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. Rep. 842. Burchard v. Phillips, 11 Paige, 66, was a proceeding to set aside an order for the distribution of surplus money arising from the foreclosure of a mortgage. The moving party had failed to file a notice of his claim, and the money having been paid out, under an order regularly obtained, to one who was equitably entitled to the money, at least as much as the claimant, the court refused to set aside the order for distribution already made. The chancellor, however, says: "But, where the money has been paid out under an order irregularly obtained, I presume the court has jurisdiction, in a summary proceeding, to compel a party who has obtained possession of its funds improperly, and without its authority, to restore the same." An irregularity is defined to be "the want of adherence to some prescribed rule or mode of proceeding, and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or in doing it in an unseasonable time or improper manner." Bank v. Blye, 119 N. Y. 414, 418, 23 N. E. Rep. 805. The irregularity, in this case, consists in omitting to give notice to certain creditors of the proceedings for final accounting. By reason of this omission, those who received notice obtained a larger portion of the funds belonging to the estate than they were actually entitled to, while others, who were equally entitled to share in the distribution, received none at all. In the case of Bank v. Sharer, 25 Hun, 409, which was a proceeding for the distribution of surplus money arising from a foreclosure by action, there was an omission to give notice to one of the creditors; and an order had been made, distributing the money among those who were parties to the proceeding, and the money had been paid out under the order. The court made a new order, sending the case back to the referee for further proof, and for the distribution of the fund ratably among all the creditors. In its opinion, the court says, "The fact that the other creditors have received the money which was probably

payable to him, cannot change the legal aspect of the case." In Re Estate of Gilman, 7 N. Y. St. Rep. 321, the court, at general term, affirmed an order of the surrogate of New York which required a legatee in the will to pay back moneys which had been paid to her under an order previously made. In Re Underhill, 117 N. Y. 471, 22 N. E. Rep. 1120, the court of appeals decided that while a surrogate may make and state an account so as to show what amounts have been paid to a legatee, and the fact of overpayment, yet he cannot give an affirmative judgment in favor of the executor, and against the legatee, for the excess. This want of power, however, is owing to the infirmity of the statute creating and defining the jurisdiction of the surrogates' courts. The court draws a distinction between what a surrogate's court may do, with its limited powers, and what a county court may do, under the general jurisdiction given it by the assignment act. In Re Morgan, 34 Hun, 217, an order was made, after a decree on a final accounting had been entered, directing a creditor who had been voluntarily paid, by the assignee, money to which he was not entitled, to refund the same, for the purpose of having it paid to the creditor who should have had it. This decision was affirmed by the court of appeals, 99 N. Y. 145, 1 N. E. Rep. 406. No action for the recovery of the money is necessary. The proceeding is properly brought by petition and citation. No sound distinction can be made between cases where money has been voluntarily paid by an assignee to a creditor, in excess of his proportion, and cases in which money has been paid under a decree irregularly obtained. The cases cited make no such distinction. A court, as we have seen, has the power to open and set aside its own decrees; and, having done so, it may proceed to make and enter such a decree as should have been made in the first instance. The exercise of this right is a matter which addresses itself to the sound discretion of the court. Mayor v. Smith, 138 N. Y. 676, 34 N. E. Rep. 400. It is claimed that Kerr v. Blodgett, 48 N. Y. 62, is opposed to these views. In that case it appeared that an accounting had been had by the assignee under the law as it stood prior to the passage of the general assignment act. All the proceedings on the accounting were regular. A notice had been published for all creditors to come in, and exhibit their demands, on or before a day which was therein appointed. A decree had been made for the distribution of the funds, and the money paid out in the manner specified in the decree. The plaintiffs did not come in, under the notice, and exhibit their demands, and the court refused to order the assignee to render an account. That case and this would have been more nearly parallel if the petitioning creditors in this case had failed to present their claims before the citation for a final accounting had been issued. Michael Lackey, Jr., the assignee in this matter, could have had no motive, as far as can be seen, in excluding any of the creditors from the proceedings on the accounting. It was very important for him that all should have had notice. But by some oversight, negligence, or mistake. the real nature of which does not appear, he

omitted, in his petition for an accounting, the names of certain creditors which should have appeared there. No wrong was intended, but much injury would be done if the error could not now be corrected. Upon principle and authority, the applications made by the petitioning creditors and assignees should be granted. Application granted.