## RATHBUN and others *vs.* ACKER.

18b 393
52ad330
18b 393
166a 177

When a statute requires service of a notice upon an individual, it means *personal service;* unless some other service is specified or indicated.

Statutes in derogation of the common law, and by which authority is delegated to corporations, &c. to sell the real estate of the citizen, or acquire the title thereto, are to be strictly construed; and the authority is to be clearly shown, and *strictly pursued.*

Thus, if a statute requires personal notice of a village ordinance to be given to the owner of lots affected by such ordinance, a notice by mail, though it reaches the party, is not a compliance with the statute.

Where a statute requires that *notice* of a village ordinance shall be published, it is not sufficient to publish the ordinance itself, without any notice that it is an ordinance, passed by the trustees.

Where the charter of a village provided that if any person, upon whose estate or property a tax should be assessed by the trustees, should neglect to pay the same, and there should be no personal property found whereon to levy, the collector should make return thereof to the trustees, who were then authorized to cause the estate, on which the tax was assessed, to be sold; *Held*, that the trustees were not authorized to sell land assessed, before a tax warrant had been issued, and an attempt made to collect the tax, of the owner of the land.

THIS was an appeal, by the plaintiffs, from a judgment entered upon the report of a referee.

Rathbun *v.* Acker.

*S. Caverno,* for the plaintiffs.

*B. L. Bessac,* for the defendant.

*By the Court,* MARVIN, P. J. By the act incorporating the village of Medina, passed May 9, 1837, the trustees are authorized to make by-laws for a variety of things, and to provide for, and open, streets, and regulate the grading, paving, repairing and improving the same; to compel the owners of lots and grounds to construct side-walks in front thereof, and to cover such side-walks with gravel, or to flag them with bricks or stones, and keep them in repair. The trustees are authorized to prescribe penalties for a violation of the by-laws. The by-laws are to be published before they take effect. (*Laws of* 1837, *p.* 393, § 14.) The charter was amended in 1839. It declares that whenever any non-resident owner of lots or grounds lying in the village shall have been required to construct side-walks in front or along the side of his lots, &c., and shall neglect or refuse to construct the same in the manner required, "for ninety days after notice thereof, to be served on such owner, or his or her agent, or if no such agent shall reside in said village, and such notice shall not be served on such owner, such notice shall be published for ninety days, once in each week, in some newspaper in said village. It is also declared that the trustees are authorized to construct and flag such side-walk, and the expense thereof shall be a tax upon such owner or owners, and a lien upon such lots, and may be collected by a sale of the land, in the same manner as other taxes are authorized to be collected, &c.

On the 15th of April, 1851, the trustees ordained that the owners of certain lots, specifying them, and among which were three lots belonging to Horatio N. Hewes, a non-resident of the village, should construct and grade a side-walk in front of the lots, and specifying the manner of construction. This ordinance was published for three months, once in each week, in a newspaper published in the village. On the 20th of April, 1851, a notice was *mailed* at Medina, directed to Hewes at Shelby, in the same county. The notice was received by Hewes, from the post office,

Rathbun *v.* Acker.

on the 22d of April. The notice informed him that an ordinance, was made by the trustees, and that it was published in the Medina Citizen; and that he would see that he was thereby required to construct a side-walk across and in front of his lots 24, 25 and 111, on Shelby street, grade to be 14 feet wide, and 7 feet of the center of the same flagged with round stone, in ninety days from that date. The notice was dated April 15.

Was this notice *served*, in contemplation of the statute; and if so, was it sufficient? The statute is, if the owner neglects or refuses to construct the side-walk "for ninety days after notice thereof to be served on such owner or his or her agent," &c. The service here intended is *personal service*. When a statute requires service on a person, it means personal service, unless some other service is specified or indicated. There was no personal service, in this case, on Hewes or his agent. I also think the notice was insufficient; but it is not necessary to consider this. If the owner has no agent residing in the village, and such notice shall not be served on the owner, such notice shall be published for ninety days, &c. Has any notice been published? The ordinance has been published, but was this the notice contemplated by the statute? It was necessary to publish the ordinance, as a by-law, by the original charter, § 14; and by the amendatory acts, whenever any non-resident owner shall have been required to construct side-walks, in the manner, &c., *and in pursuance of the act aforesaid,* and shall neglect, &c., for ninety days after notice, &c., *such notice* shall be published. The ordinance required that the owner or owners of lots 24, 25 and 111, on Shelby street, should construct the side-walk. By the statute "notice thereof," must be served on the owner, or be, published. Notice of what? Was the simple publication of the ordinance the publication of *notice* of it and its requirements? The publication of the ordinance was not preceded, or followed, or accompanied by any notice to any body that it was an ordinance passed by the trustees.

Again; neither Hewes nor his tenant is named in the ordinance. The trustees ordain that the owner or owners of the lots shall construct side-walks. I do not find any thing in the charter

or amendments touching *unknown owners.* Then was the ordi-
nance sufficient? But I will not express any opinion of this.

Had the trustees' authority to proceed at once to collect the
amount expended for constructing the side-walks, by a sale of
the lots? No warrant to collect the tax was issued, but the
trustees passed a resolution to sell the lots to raise the money
to pay the cost of constructing the side-walk, and thereupon they
published a notice of the sale, and sold the lots, &c. Where did
they find authority to do this? The original charter provides for
raising money for various purposes, and for imposing and collect-
ing taxes. But I can find no authority for selling real estate until
a warrant to collect the tax shall have been issued to the collec-
tor, and he shall have made a return of certain facts, &c. (*See*
§ 35 *and* §§ 27, 28, 32, 34.) By § 35, if any person upon whose
estate or property a tax shall be assessed, shall neglect to pay, and
there shall be no personal property found whereon the same can
be levied, or out of which such tax can be collected, the collector
shall make return thereof to the trustees, who are authorized
to cause the estate, on which such tax was assessed, to be sold
at public auction for a term of time, &c. Here is the only au-
thority I find, in the original act, for selling real estate. But
I suppose the trustees claim the authority for their proceedings
under the act of 1839, § 4. Let us examine it. The trustees
may construct the side-walk, and all the expense thereof shall
*be a tax upon such owner or owners;* and a lien upon such lots or
grounds, and may be collected by a sale of the same or any part
thereof, *in the same manner as other taxes are authorized
and directed to be collected* in the 35th, 36th and 37th sections of
the act hereby amended. We have seen by section 35 that when
there shall be no personal property found, whereon to levy and
collect the tax, the collector is to make return thereof to the trus-
tees, and they are then authorized to cause the estate on which
such tax was assessed, to be sold. The collection, by the act of
1839, may be in the same manner. It may be by a sale of the
lots or grounds upon which the tax was a lien. The expense
of the work is a tax upon the *owner*, and a lien upon the land.
The section is somewhat ambiguous, but in my opinion it was

never intended to authorize the trustees to sell the land before a tax warrant was issued, and an attempt made to collect the tax of the owner of the land.

I shall not remark upon other questions raised, but conclude by repeating what has been so often decided, and so often disregarded; that statutes in derogation of the common law, and by which authority is delegated to corporations, &c., to sell the real estate of the citizen, or acquire the title thereto, are to be strictly construed; and the authority is to be clearly shown, and *strictly pursued.* It will not do to adopt a course not authorized by the statute, upon the principle that it is equivalent to the requirement of the statute. For instance, if the statute requires personal notice, a notice by mail, though it reaches the party, is no compliance with the statute.

I am satisfied with the conclusions of law of the referee, and the judgment should be affirmed.

[GENESEE GENERAL TERM, September 4, 1854. *Marvin, Bowen* and *Green,* Justices.]