(17 Misc. Rep. 534)

### BROOKS v. TAYNTOR et al.

(Supreme Court, Special Term, New York County. July, 1896.)

1. CEMETERIES—LIEN ON GRAVE STONES—SERVICE OF NOTICE.
   Under Laws 1888, c. 543, which gives a lien for the purchase price on any monument or other structure erected in a grave yard, and provides that the seller shall file notice of his lien with the superintendent in charge of the grave yard, and that the superintendent shall forthwith notify the owner of the lot, and that, if the amount is not paid within 60 days, the seller may remove the monument or structure, service of notice on the owner of the lot is not sufficient where it appears that the superintendent merely directed the seller's agent to deliver a copy of the notice to the owner of the lot, and the copy did not state when or where the lien was filed.

2. CONSTITUTIONAL LAW—LIEN ON GRAVE STONE.
   Laws 1888, c. 543, giving a lien for the purchase price on any monument or other structure erected in a grave yard, and providing that the seller may remove it if the price is not paid within a certain time, after service of notice of lien on the superintendent of the burial ground, who is required to notify the owner of the lot, authorizes the taking of property without due process of law.

Action by William Brooks against Charles Tayntor and others for an injunction.    Judgment for plaintiff.

Alexander Thain, for plaintiff.
Hugo Hirsh, for defendants.

DAVY, J.    This action is brought to restrain the defendants from removing a granite monument from plaintiff's burial plot in Greenwood Cemetery, which was erected in memory of his deceased wife and daughter.    The monument was sold and delivered by the defendants to the plaintiff in 1893, for the sum of $1,850.    The amount due and unpaid of the purchase price at the time of the commencement of this action was $1,363.67, with interest thereon from August 10, 1894, for which last-mentioned sum the defendants claim a lien upon the monument, under chapter 543, Laws 1888.    The act, in terms, declares that every person, firm, corporation, or association that shall hereafter furnish or place in any cemetery or burial ground any monument, grave stone, inclosure, or other structure may at any time, or within one year after the bill for the same becomes due, file with the superintendent or person in charge of such cemetery or burial ground notice in writing, signed by the vendor, to the effect that he claims a lien on the same for the purchase price thereof, or such portion of the purchase price as remains unpaid, with interest. The act requires the superintendent or person in charge of the cemetery or burial ground to forthwith notify the owner of the plot of the filing of said notice of lien.    Section 2 provides that, in case the amount due be not paid within 6 months after the service of said notice on the plot owner, the person claiming such lien shall within 60 days have the right, on 10 days' notice to the superintendent or person in charge of the cemetery or burial ground, to remove the monument or other structure from the cemetery or burial ground, and shall advertise and sell the same at public auction to the highest bidder, to satisfy the lien.

It was agreed between the respective counsel upon the trial that only two questions should be raised and passed upon by the court: First. Was the notice provided by said act properly served on the plaintiff?    Second. Is the act constitutional?

The character and extent of a statutory lien must always be ascertained by the terms of the act of the legislature creating and defining it.    A statutory lien, therefore, cannot exist or be enforced unless it has been perfected in the manner described by statute.    The very nature of the act under which the defendants claim their lien is so repulsive that no presumption will be permitted in their favor; and, unless they have complied strictly with the requirements of the statute, their lien cannot be enforced, even if there were no constitutional objections to it.    The act in question, after providing for the filing of the lien, requires the superintendent or person in charge of the burial ground to forthwith notify the owner or owners of the plot of the filing of the notice of lien.    It appears from the evidence that the superintendent, instead of serving notice on the plaintiff that the lien had been filed, directed the defendants' agent to deliver a copy of the paper served on him to the plaintiff.    This copy does not purport to tell when the lien was filed, or with whom it was filed, and no claim is made by the superintendent or agent that

they ever notified the plaintiff that such a lien had been filed.    The service of a copy of the lien upon the plaintiff, without notifying him that the lien had been filed with the superintendent, is not, it seems to me, the service of such a notice as the statute contemplates. It was held in McDermott v. Board of Police, 25 Barb. 635, that, when the legislature directs the giving of notice as a condition precedent to the doing of an act, they may also prescribe the mode of giving notice, but, in the absence of any provision on that subject, personal service of notice is necessary, and, unless the person proceeded against is duly notified according to law, the tribunal, court, or officer has no jurisdiction over him, and the proceedings are coram non judice.    In Pearson v. Lovejoy, 53 Barb. 407, the court held that the rule is well settled that, when notice is required or authorized by statute in legal proceedings, it means written notice.    Rathbun v. Acker, 18 Barb. 393.    It was one of the distinguishing features of common law that no judgment affecting the personal property rights of a defendant could be rendered except upon personal service.    It is a rule well settled that statutes in derogation of the common law, and by which authority is delegated to an individual to sell property of the citizen, or acquire title thereto, are to be strictly construed, and the authority is to be clearly shown and strictly pursued.    Rathbun v. Acker, supra.    It would seem, therefore, that the notice of the filing of the lien which the act requires the superintendent to serve on the lot owner should be in writing, and signed by the superintendent, and served personally on the owner of the lot.    When this case was before the general term upon the appeal from the special term order refusing to vacate the preliminary injunction (91 Hun, 338, 36 N. Y. Supp. 246), Van Brunt, P. J., characterized the act as an "extraordinary legislative production."    In speaking of that part of the act in regard to the service of the notice upon the owner of the monument, the learned justice said: "It seems to be somewhat difficult to understand exactly how such a requirement upon the part of the superintendent of a burial ground can be enforced."    He adds that "the right to foreclose the lien under the statute depended upon the expiration of a certain time after the service of notice of the filing of the notice of lien by the superintendent of the cemetery, and no authority is given to anybody else to usurp this duty."    In Re Empire City Bank, 18 N. Y. 215, Judge Denio said: "It may be admitted that a statute which should authorize any debt or damages to be adjudged against a person upon a purely ex parte proceeding, without a pretense of notice or any provision for defending, would be a violation of the constitution, and would be void."

The act in question is almost without precedent in the legislative history of the state.    It confers upon the lienors the right to go upon the plaintiff's burying plot, and dig up and remove the monument, and sell it at public auction, without the consent of the owner, and without instituting legal proceedings of any kind.    In removing the monument, they may desecrate the graves, and disturb the remains of plaintiff's deceased wife and daughter; and the statute in question affords him no protection.    The learned counsel for the defendants

contended upon the argument that desecrating the graves is merely a sentiment, and that the act permitting it to be done is not against public policy.    Conceding that it is a mere matter of sentiment, it is one, however, that has received the sanction and approval of mankind in all ages.    Every civilized country regards the resting place of the dead as hallowed ground, and not subject to liens, and to be sold upon execution, like ordinary property.    Courts of equity have always been ready to restrain those who threaten to desecrate the graves of the dead, and to protect the sentiment of natural affection which the surviving kindred and friends entertain for their departed relatives.    It is a sentiment that the legislature of this state recognized years ago, by passing appropriate laws to preserve and protect the resting places of the dead.    The Revised Statutes (3 Banks' 8th Ed. p. 1947) provide that "no land actually used and occupied for cemetery purposes shall be sold under an execution or for any taxes or assessment, nor shall such taxes or assessment be levied, collected or imposed, nor shall it be lawful to mortgage such lands or to apply it in payment of debts so long as it shall continue to be used for cemetery purposes."    The Penal Code makes it a misdemeanor for any person not being the owner of a burying plot, without lawful authority, to willfully injure, disfigure, remove, or destroy a grave stone, monument, or any shade tree or ornamental plant, or to remove from any grave any flowers, mementoes, or other token of affection.

In passing upon the unconstitutionality of this act, I am not unmindful of the duty of the courts to weigh carefully all that may be urged in favor of the validity of an act of the legislative department of the government, before declaring it in conflict with the constitution, and only to announce such a conclusion when no doubt is entertained of its correctness.    I am also aware of the well-settled rule which requires every statute to be so construed as to uphold its constitutionality if it can be done by fair and reasonable interpretation of its language; but when a court, even at special term, is called upon to pass upon the constitutionality of a statute, and it is found that the constitutional rights of the individual will be invaded by the operation or enforcement of it, then it becomes the duty of the court to protect the rights and property of the individual by holding, if necessary, that the act is unconstitutional. It is elementary that the highest obligation of a state under its constitution is to protect and defend its citizens in the enjoyment of their property. The operation of this statute makes the defendants judges in their own case. They have the right to determine and say that their claim has not been paid, when in fact it may have been paid; and there is no tribunal provided for by the act before whom the plaintiff can appear and have his rights protected and adjudicated.    The legislature has attempted, by the passage of this act, to take from one individual his property by mere force of legislative enactment, and to give it to another, without any legal process, and without giving him an opportunity to be heard and defend his title and possession.    In People v. O'Brien, 111 N. Y. 58, 18 N. E. 692, Chief Judge Ruger said, in substance, that the attempt to transfer property to a third party,

by mere force of the statute, without the consent or knowledge of the lawful owner, was an effort to change the ownership without due process of law, and that such legislation had frequently and emphatically been condemned.    Taylor v. Porter, 4 Hill, 147; Parker v. Browning, 8 Paige, 388; Wynehamer v. People, 13 N. Y. 378; Cooley, Const. Lim. p. 355.    No principle is more vital to the administration of justice than that no man shall be condemned in his person or property without notice, and an opportunity to make his defense. In Stuart v. Palmer, 74 N. Y. 183, Judge Earl said: "Due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights."    A hearing and an opportunity to be heard are absolutely essential.    Webster gave a definition of the meaning of the words "law of the land" and "due process of law" in his great argument in the celebrated Dartmouth College Case, reported in 4 Wheat. 629, which has received the sanction of the courts. He said: "By the 'law of the land' is most clearly intended the general law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial.    It means that every citizen shall hold his life, liberty, and property under the protection of the general rules which govern society."    A very excellent definition is given by Judge Edwards in Westervelt v. Gregg, 12 N. Y. 209.    He says:  "'Due process of law' undoubtedly means in due course of legal proceedings, according to those rules and principles which have been established for the protection of private rights." In People v. Supervisors of Essex Co., 70 N. Y. 234, Judge Folger, in speaking for the court, said: "Due process of law requires that the party shall be properly brought into court, and that he shall have an opportunity, when there, to prove any fact which, according to the constitution and the usage of the common law, would be a protection to him or his property."    It would seem, therefore, that the constitution, as interpreted by the federal and state courts, means that due process of law requires that notice shall be given to the person whose property is to be taken, and that he shall have an opportunity to be heard, and that the hearing shall be before a court or other tribunal lawfully constituted and organized, and clothed with authority to act and decide the questions involved in the proceedings, and that the hearing and trial and decision shall be according to law. It is evident that the act in question authorizes the taking of plaintiff's property without due process of law, and is therefore unconstitutional and void.    There can be no adequate remedy by the ordinary process of law in a case like this.    The remedy must be had, if at all, in the protecting power of a court of equity, operating, by its injunction, to protect the property of the living, and preserve the repose of the dead.    The plaintiff, therefore, is entitled to a perpetual injunction against the defendants, restraining them and their agents and servants from interfering with said monument or other structures or fixtures belonging to the plaintiff upon said burial lot.

Let judgment be entered accordingly, with costs against the defendants.