## HERTER v. MULLEN et al.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

1. LANDLORD AND TENANT—TERMINATION OF TENANCY—NOTICE BY MAIL.

Where a tenant mailed his landlord the keys to premises, the tenancy did not terminate till the actual receipt of keys by the landlord, some weeks later, notwithstanding the tenant had been accustomed to send his rent by mail, since personal notice to a landlord is necessary to terminate a tenancy.

2. SAME.

Where a tenant is unable to leave at the end of the term because of serious illness in his family, when the exigency ceases he must give his landlord notice of his intention to leave the premises.

McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by Albert Herter against Jeremiah J. Mullen and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

George Putnam Smith, for appellant.
Bernard J. Tinney, for respondents.

RUMSEY, J. This action was brought to recover for rent claimed to have accrued in favor of the plaintiff because the defendants held over in possession of a house (which they had leased from the plaintiff) after the expiration of the lease on the 1st of May, 1895. The letting seems to have been by parol. That it expired on the 1st of May, 1895, and that the defendants stayed in the house until the 15th of May, is not denied. Because of these two facts the plaintiff claims to be entitled, at his option, to consider the lease extended for another year upon the same terms as the previous year, and to recover the rent down to the time of the bringing of the action, which was in November, 1895. At the first trial, the plaintiff was permitted so to recover, but the judgment was reversed by the court of appeals, upon the ground that the holding over was not such a one as to entitle the landlord to regard the defendants as tenants for another year, and for that reason held that the plaintiff could not recover rent for the whole year. Herter v. Mullen, 159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703. Upon that point, undoubtedly, the decision of the court of appeals is binding in all future trials of the case. The majority of the court delivered two opinions, and, so far as the majority concurred in the reasoning of those opinions and in the principles announced as the basis for the conclusion which they reached, those principles are, as the result of their determination, binding upon us in the consideration of this appeal.

When the case was before the court of appeals, it appears to have been a conceded fact that the defendants were prevented from vacating the premises upon the expiration of their lease because of the serious illness of their mother, who was one of their family. Her condition was such that any attempt to remove her on the 1st of May would undoubtedly have resulted in her death, and it was also conceded

that the defendants removed from the house on the earliest possible
day when that condition had ceased to exist.  Upon these facts the
majority of the court agreed that the holding over was not wrongful,
and ,that the defendants were not trespassers, because, as the duty
to remove from the premises upon the termination of the lease was
not one arising from any express contract between the parties,—be-
cause there was no written lease, but only one implied by law,—the
rule which relieves a party from the performance of a duty created by
law when that duty is rendered impossible by an act of God or by
an unavoidable accident, through no fault of the party himself, was
to be applied; and for this reason the defendants were not liable for
a year's rent.  To what extent they were liable was not determined
by the court of appeals, because that question was not presented for
decision; but it is now presented, and must be decided.

The serious illness of the mother; the unavoidable holding over by
the defendants in consequence thereof until the 15th of May; their
removal upon that day, the earliest upon which it was possible to do
so,—all these facts were made to appear on the second trial, as they
had been upon the first.  It appeared, in addition, however, that upon
the day of the removal the keys of the house, two in number, were
attached to a tag which was addressed to Mrs. Herter, the plaintiff's
agent, at her house, No. 541 Madison avenue, New York City, and,
thus addressed, mailed by putting them in a post-office box at the
street corner.  Mrs. Herter had before then gone to Monmouth Beach,
and had given directions for her mail to be sent to her at that place.
She came back to New York about the 15th of May, remaining a few
days, and then went to Onteora, in Greene county, where she stayed
until some time in June.  She gave directions, either at New York
or at Monmouth Beach, for her mail to be forwarded to her at
Onteora.  What became of the keys from the time when they were
put in the post-office box on the 15th of May until they were received
by Mrs. Herter does not appear, but it does appear that they arrived
at the post office at Onteora on the 2d of June and were at once de-
livered to Mrs. Herter.  A letter was sent to her on the 16th of May,
advising her that the house was vacant; but it was not signed by
either of the defendants, and by whom it was signed does not appear,
nor does it appear when it was received, though Mrs. Herter thought
it was some time after its date.  Upon this state of facts, the defend-
ants contend that, having vacated the house on the 15th of May, and
having mailed the keys to the plaintiff's agent, they were relieved
from paying rent after that day.  The plaintiff contends that, al-
though the house may have been vacated on the 15th of May, yet it
was the duty of the defendants to give her actual notice of that fact
and of the surrender of the house to her, and that until that actual
notice was received by her she was entitled to hold them liable for the
rent.  The learned justice at the trial term held that the mailing of
the keys was a sufficient notice of the fact of the surrender, and that
therefore the plaintiff was entitled to recover rent only to the 15th
of May.  The rent due to that time being less than $50, its amount
($49.29) was deducted from the costs, and judgment was entered for
the defendants for their costs in excess of the amount so recovered.

The first question presented by this appeal is, what was the nature of the defendants' liability after their holding over? The court of appeals held that they were not trespassers, from which it follows that they were lawfully there. Being lawfully there, it necessarily follows that the plaintiff could not sue them for trespass. Their remaining there was by virtue of the possession which they had originally obtained under the expired lease. Although its terms had come to an end, yet, because of the unavoidable necessity of remaining, the duty to vacate the premises had not yet arisen, and the defendants were relieved from that requirement of their contract until their mother became well enough to be removed. As, then, they were there lawfully under their lease, because they had been relieved by unavoidable necessity from the duty of vacating the premises, it is fair to assume that the relation between the defendants and the plaintiff was such that he could insist that as they remained there under the lease, and that until the unavoidable necessity which kept them there should cease, they were still his tenants, and liable to perform all the acts which, as tenants, they were bound to do under the lease. One of these was, of course, the payment of rent; and, as the plaintiff was at liberty to insist that the defendants were tenants, he was undoubtedly at liberty to claim that they were liable for the rent just so long as they continued in occupation of the premises, although the court of appeals has held that they were not liable for a year's rent, for the reasons given in their opinions. But the same considerations which, in ordinary cases, would entitle a landlord to insist upon the liability of a tenant for a year's rent upon his holding over, apply, I think, to this case, to authorize him to insist that the term is continued until the premises are surrendered, and that he is liable for rent until that time, although not liable for a full year's rent, as the court of appeals has held. The same principle applies as when one converts property of another to his own use, in which case the owner, if he does not see fit to insist upon a tort, may sue for the price of it upon an implied contract of sale.

The question, then, arises, how long did this liability continue? and that is to be decided by considering what was the duty of the defendants in surrendering the premises. They were in possession because of an unavoidable necessity which required their remaining, and it follows that, just so long as that condition lasted, just so long their right to remain continued. The plaintiff had no means of ascertaining when that tenancy would come to an end, because it would continue until the exigency which justified its existence had passed. As between the two parties, the defendants alone could become aware when that occurred. If they were entitled to stay until then, they were bound to give notice when the necessity for their stay ended. It clearly was not the duty of the plaintiff to set a watch to see when the defendants were able to leave. He was kept out of the possession of the house by an unavoidable necessity, the end of which the defendants alone would know; and he was entitled, when that exigency ceased, to have the defendants give him actual notice of that fact, and that they wished to surrender the house, and were about to vacate it, and for him to take charge of it. It was

clearly, then, the duty of the defendants to give the landlord notice of their intention to leave the premises.    4 Kent, Comm. (10th Ed.) 103, 130;  Ellis v. Paige, 2 Pick. 71, note.   See, also, Rorbach v. Crossett (Sup.) 19 N. Y. Supp. 450; Ludington v. Garlock (Sup.) 9 N. Y. Supp. 24;  Adams v. City of Cohoes, 127 N. Y. 174, 28 N. E. 25; Id., 53 Hun, 260, 6 N. Y. Supp. 617.

Was a sufficient notice given by the deposit of the keys of the house in a post-office box on the street corner, although they were received by the plaintiff's agent two weeks after such mailing?   It seems that the parties had been accustomed to pay and receive the rent in that way, and when the rent was received by the plaintiff through the post-office department it was acknowledged, and, as thus received, accepted.   Whether that made the post-office department the agent of the plaintiff or of the defendants is a matter of no importance, nor material in this controversy.   But there is considerable difference between a permission to use the mails as a means for the payment of rent, and a permission to use them to give notice of the termination of an estate.   In the one case, it is undoubtedly a business transaction, such as takes place every day; in the other, it is a proposition to give up the possession of premises which have been lawfully held by the defendants, and which the plaintiff is entitled to take possession of because the defendants' right to hold them is at an end.   The notice to which the plaintiff was entitled was such as would enable him to assert his rights of ownership and take possession of the house. Whenever a party is entitled to such a notice, he is entitled to a personal notice, and I am not aware of any provision of law entitling a party to serve any notice by mail, except in a few cases where that permission is expressly given by statute.   Rathbun v. Acker, 18 Barb. 393;  McDermott v. Board, 25 Barb. 635;  People v. Lockport & B. R. Co., 13 Hun, 211.   In every other case he is bound to give personal notice, and, if he resorts to some agent to give that personal notice, the acts of the agent are his own, and he remains responsible until the person entitled to that notice has actually received it.   There is no doubt of the existence of this rule; and, applying it to the present case, the defendants were bound to give to the plaintiff personal notice of the fact that the house had been vacated, and bound at their own peril to see that the plaintiff actually received that notice, so that he could take possession of it and protect it.   Until that was done, they had not relieved themselves of the obligation which their holding over entailed upon them.   There is no claim that any notice was given until the keys were delivered to Mrs. Herter by the post-mistress at Onteora on the 2d of June.   Therefore, it seems to me that the defendants had not, during that time at least, performed their duty of giving a notice of their surrender of the premises to the plaintiff, and that he was entitled to insist that the rent to that time should be paid.

For that reason, the decision of the learned trial justice at the trial term was incorrect, and the plaintiff should have been permitted to recover rent at least until the 2d of June, 1895; and the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the result.

PATTERSON, P. J., concurs. INGRAHAM, J., concurs in result.

McLAUGHLIN, J. (dissenting). The action was brought to recover rent alleged to be due under a lease. The plaintiff had a verdict, and from the judgment entered thereon he has appealed. The complaint, except the formal parts of it, was as follows:

"(2) That on or about March 9, 1894, plaintiff rented to the defendants, and they hired and took from him, a certain portion of the dwelling house known as 'No. 2046 Madison Avenue,' in the city of New York, from May 1, 1894, at the yearly rent of nine hundred and twenty-five ($925) dollars, payable in equal monthly installments on the 1st day of each month, in advance. (3) That said defendants took possession of said premises on or about May 1, 1894, and have continued in possession thereof ever since. (4) That the defendants have not paid the monthly installments for rent for May, June, July, August, September, October, or November, 1895, amounting to five hundred and thirty-nine $^{59}/_{100}$ ($539.59) dollars."

Judgment was demanded for this amount. The answer admitted that at the time stated in the complaint the parties entered into an agreement by which the defendants hired from the plaintiff the premises referred to, for one year,—May 1, 1894, to May 1, 1895,—and alleged:

"That on May 1, 1895, the defendants were prevented from yielding up possession by the act of God in afflicting the mother of these defendants, who was a member of the family of defendants, with a disease which, on said day and for some time prior thereto, and to and including May 15, 1895, confined her to her bed, and which disease and affliction was so great that it would have endangered her life to have taken her from her room in said house referred to in plaintiff's complaint; that her life would have been imperiled, or her disease aggravated, and that for this reason, and for no other, of which plaintiff had full knowledge and notice from these defendants, defendants were obliged to, and did, occupy said premises until May 15, 1895, and no longer; that all property, furniture, and belongings of defendants and their family were removed from said premises, and each and every part thereof, on May 1, 1895, except from the sick room or bedroom in which their said mother was confined, and defendants were forbidden by the physician in charge from moving or in any manner disturbing their mother until May 15, 1895, when she was removed."

The answer further alleged that on the 15th of May, 1895, possession of the premises was surrendered to and accepted by the plaintiff. Upon the issues thus raised, two trials have been had. At the first, the facts were agreed upon, and they were substantially those alleged in the answer, except the allegation that plaintiff accepted the surrender of the premises; and the trial court held that the possession of the one room for a period of 15 days after the expiration of the lease constituted a holding over within the meaning of the law, and gave to the plaintiff (the landlord) the option of treating the defendants (the tenants) as trespassers or as tenants for another year, and that the plaintiff, by bringing the action in the form in which he did, had elected to treat them as tenants; and it thereupon directed a verdict for the plaintiff for the amount claimed in the complaint. The defendants excepted, and from the judgment thereafter entered they appealed to this court, where the judgment was affirmed (9 App. Div. 593, 41 N. Y. Supp. 708), but on appeal to the court of appeals it was reversed and a new trial ordered (159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703).

At the second trial, substantially the same facts which were agreed upon at the first trial were established by the evidence introduced,—that the mother was a member of the defendants' family; that her serious illness rendered it impossible for defendants to entirely remove from the premises on the 1st of May; that they did remove all of their property and effects from the premises on that day, except from the one room in which the mother was confined; and that they removed entirely from that on the 15th of May, which was the earliest day that the attending physician would permit her to be moved. In addition to these facts, it was also made to appear, by testimony offered on the part of the defendants, that upon the day the mother was removed from the house the keys thereto, two in number, were attached to a tag, addressed to the plaintiff's agent at 841 Madison avenue, and sent to her by mail, with the postage prepaid thereon; that she was accustomed to receive mail there, the defendants having sent to her at that place checks in payment of the rent under the lease. The plaintiff's agent testified, however, that she did not receive the keys until the 2d or 3d of June; and, as tending to explain this fact, it was shown that she left the city of New York early in May, and, before leaving, gave directions to the post-office authorities to forward her mail to Monmouth Beach, the place to which she went, and where she remained until the 15th of May, when she returned to and remained in the city of New York until the 21st of that month, when she again left, and went to Onteora, where she remained until the 10th of June, and it was at the latter place, according to her testimony, that she personally received the keys. It also appeared that on or about the 16th of May, the plaintiff's agent (the exact date she was unable to state) received the following letter, addressed to her at her residence, 841 Madison avenue:

"New York, May 16, 1895.

"Mrs. Mary Herter, 841 Madison Avenue, N. Y. City—Madam: Your house, 2046 Madison avenue, is now vacant. Kindly send your account.

"Mrs. Margaret Mullen, per J. M."

At the close of the trial, the plaintiff moved for the direction of a verdict for the amount claimed in the complaint, which was denied; the trial court holding that the defendants were only liable for rent from the 1st of May to the time when they surrendered possession, and that, if such surrender was made on the 15th of May, then the plaintiff was only entitled to recover for 15 days' rent, and when the surrender actually was made was a question of fact to be determined by the jury. No exception was taken to this ruling, and the case was thereupon submitted to the jury with instructions to this effect; the learned trial justice, among other things, saying:

"This question of surrender is one that goes to you for determination. The case hinges upon your finding on that subject. If you find, as matter of fact, that the keys were tied together,—a tag attached to them,—and addressed to the landlord at her residence on Madison avenue, postage thereon prepaid, and that they were properly deposited in the post office on May 15, 1895, the surrender by the defendants was complete on the receipt at the landlord's house of those keys, and there was no liability for the rent after that time; that is, after the time the keys reached the landlord's home on Madison avenue. * * * If the keys were mailed on May 15th, and reached Mrs. Herter's house on that day, find for the plaintiff for $49.29, the rent for 15 days, with

the interest included. If the keys were not mailed until the latter part of May, find in favor of the plaintiff for one month's rent, and interest, together making $77.08."

The instruction thus given seems to have been entirely satisfactory to the plaintiff, because he took no exception to it. The jury rendered a verdict of $49.29, and the plaintiff is not in a position to challenge its correctness. As already said, he took no exception to the charge of the court, directing the jury to return a verdict for this sum provided they found certain facts to exist, and, in the absence of an exception, it must be held, as it seems to me, that the plaintiff was concluded by it. The jury, by their verdict, found that the keys were mailed to and received at the residence of the plaintiff's agent on the 15th of May. There is evidence to sustain the finding, and it certainly cannot be said to be against the weight of evidence, in view of the fact that there is no statement in the case that it contains all the evidence given upon the trial. We have presented, then, a case which was submitted to the jury with instructions, if they found certain facts to be established, to return a verdict for a given amount. They returned a verdict for that amount, and there is some evidence to sustain the finding; and how a judgment entered upon that verdict can be reversed, when no exception was taken to the charge, and there is no certificate in the case that it contains all the evidence, I am unable to understand.

But upon the merits I think this judgment is right, and should be affirmed. Applying the rule of law laid down by the court of appeals when this case was before it to the facts established upon the trial, it must be held that the relation of landlord and tenant did not exist between the plaintiff and the defendants after the 1st of May, 1895. The court of appeals held that the defendants were not, after the 1st of May, holding over, within the meaning of the rule which permits the landlord to continue the lease and recover rent according to the terms of it. Judge O'Brien, who delivered the prevailing opinion, said:

"There can be no doubt that the rule of law is settled beyond debate or controversy which permits the landlord at his election to treat the tenant as holding over for another year, when the latter remains in possession after the expiration of the term. When the demise is for a definite term of one year, at a fixed rate, and the tenant holds over after that term expires, the landlord may treat him as a tenant, and collect rent accordingly. Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94; Adams v. City of Cohoes, 127 N. Y. 182, 28 N. E. 25. But the question is whether the tenant did, in fact, hold over after the expiration of the term, within the meaning of the rule. * * * The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year; but wherever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, must be voluntary. The law does not imply a contract or obligation from the act of a party which proceeds from a mistake or fraud, or which results from force or coercion of any kind, or is due to any stress of circumstances which involves peril to his life or that of some member of his family. * * * Where the holding over is wrongful or voluntary, and not unavoidable in the strictest sense, the rule must be permitted to have full application; but where the tenant, as in this case, is obliged to retain a room in the house for a short period of time in order to avoid the peril of exposing a member of his family to danger and death, it cannot properly be said it is a holding over within the meaning of the law."

If it is true, as Judge O'Brien says, that there was not "a holding over within the meaning of the law" after the 1st of May, then it necessarily follows that the relation of landlord and tenant, which had previously existed between the parties, terminated on that day. If it did terminate on that day, it certainly did not thereafter exist, because it is not claimed that a new lease, either written or parol, was entered into by them at or subsequent to that time, and nothing was thereafter done which was sufficient to restore that relation between the parties. According to the prevailing opinion, the defendants, because they did not personally deliver the keys to the plaintiff's agent on the 15th of May, continued in possession until such delivery was made, and were therefore liable for a month's rent at the rate stipulated in the lease. If the conclusion there reached be correct, then the plaintiff is entitled to recover, not for one month's rent, but for a year's rent. A voluntary holding over for 15 days, under all of the decisions, so far as I am aware, gives the landlord the option of treating the person holding over as a trespasser, or to waive the trespass and treat him as a tenant. Here the plaintiff waived the trespass, if it can be so called, and treated the defendants as tenants, by bringing his action to recover rent. But, as before indicated, there was no holding over after the expiration of the lease. The use and occupation of the one room from the 1st to the 15th of May was not wrongful. It was caused by circumstances for which the defendants were not responsible, and over which they had no control, and the failure to personally deliver the keys to the plaintiff's agent before the 1st of June did not have the effect of restoring the relation of landlord and tenant which had theretofore existed, or of making the defendants liable for rent until such keys were personally delivered. The relation of landlord and tenant cannot be created in this way. It can only be created by an agreement, either express or implied. It did not here exist, and therefore, under the allegations of the complaint, the plaintiff was not entitled to recover anything.

In an action to recover rent under a lease, the plaintiff must show the existence of the relation of landlord and tenant, and, unless that fact be established, no recovery can be had. Here the relation of landlord and tenant did not exist, and the complaint should have been dismissed. This does not mean that the owner of premises is not entitled to recover damages from the tenant who, on account of circumstances over which he has no control, fails to surrender possession at the expiration of the lease, or to deliver the keys personally to the landlord when he thereafter surrenders. On the contrary, the landlord in such cases is entitled to recover, in an action brought for that purpose, all the damages he has sustained. Here the defendants were obligated to pay to the plaintiff what the use and occupation of the premises were worth from the 1st of May until they surrendered possession, and, in addition thereto, such damages as resulted to the plaintiff from their unauthorized, but not wrongful, use and occupation of them. This seems to me to be the reasonable rule or measure of damages where a tenant is prevented, either by act of God or other circumstances over which he has no control, from surrendering possession at the expiration of his lease. For this occupation the landlord gets

all that he is entitled to. If he has sustained damage by reason of the occupation, in addition to the use, he gets that. He ought not, under such circumstances, to recover more, or be compelled to accept less. This, evidently, was the view entertained by the court of appeals. Judge O'Brien says:

"The plaintiff was not entitled to recover rent from the time when the house was completely vacated."

And Judge Martin says:

"It may well be, and doubtless is, true that the plaintiff may recover for the time the premises were occupied by the defendants, or if, by reason of their failure to surrender up the premises, additional damages follow, that they may be recovered in a proper action, so that all damages caused by defendants' misfortune would be borne by them. But that he cannot recover for rent for the subsequent year, upon the implied contract or duty imposed by law, seems to me clear."

But, even treating this action (and I do not see how it can be) as one brought to recover damages caused by the defendants' failure to surrender possession of the premises at the expiration of the lease, then the plaintiff is not in a position to complain of the verdict. There is no dispute but that the defendants used and occupied the premises from the 1st to the 15th of May, a period of 15 days, and they thereby became obligated to pay what the premises were reasonably worth for that time. The lease was the only evidence offered by which the jury could arrive at the value of the use and occupation, no attempt being made to establish any other damages; and they having used this as a basis for their verdict, and having found in favor of the plaintiff the sum of $49.29, the amount of rent for 15 days as fixed by the prior lease, their verdict ought not to be disturbed, because plaintiff has received all he is entitled to.

This assumes that the defendants surrendered possession on the 15th of May, and I am of the opinion that what they did constituted, in law, under the facts here presented, a valid surrender. They had been in the habit of paying to the plaintiff's agent their rent by mail. The keys were sent to the same person, at the same place, with the postage prepaid. They reached that place, and were, by the direction of the plaintiff's agent, sent to another place, either Monmouth Beach or Onteora, which was the cause of the delay in her personally receiving them. Whether they were remailed after reaching the plaintiff's residence in the city of New York, or at Monmouth Beach, does not appear. It does appear, however, that they were remailed after they were sent by the defendants, because, when they reached the plaintiff's agent at Onteora, they were inclosed in an envelope, which was not the case when they were mailed by the defendants.

I cannot assent to the proposition that a tenant cannot surrender possession of premises, after the expiration of his lease, without personally delivering the keys to the landlord. If this doctrine be true, then a tenant who is unable, by reason of circumstances over which he has no control, to surrender possession of the premises on the expiration of the lease, can be compelled to keep them for another year, by the landlord's secreting himself, leaving the state, or preventing in any way the tenant from personally delivering the keys to him. There is

not, and manifestly cannot be, such an unjust and unreasonable rule. In the case before us, can it be said that the defendants were obliged to follow the plaintiff's agent into another state? Manifestly not. What, then, could they do to surrender possession? Take the keys to the residence of the plaintiff's agent, leave them with some person in charge, or mail them to her there, and, if they reached their destination, that moment the surrender was complete. For these reasons I am unable to concur in the opinion of the court.