In the Matter of the Estate of JOHN BARKLEY EAKINS, Deceased.

Surrogate's Court, Kings County, February 3, 1939.

*McCanliss & Early* [*Robert W. Dew* of counsel], for Ida Shannon Eakins and Brooklyn Trust Company, as executors, etc., petitioners.

*Davidson & Mann* [*C. Ira Funston* of counsel], for John D. Hospelhorn, as receiver of the Baltimore Trust Company, claimant.

WINGATE, S. The decedent was the owner of 150 shares of stock of Baltimore Trust Company, a Maryland corporation. On November 13, 1935, this company was adjudicated to be insolvent, the court simultaneously duly fixing the statutory liability of stockholders at ten dollars per share. It has been stipulated that this " assessment was made pursuant to the laws of the State of Maryland " and that it " became a valid obligation against all of the stockholders of record of said bank upon the date of the signing and entry of said order."

Since the decedent was a record holder of 150 shares at that time, the effect of the admission of the stipulation is to establish that on the date of the entry of the order, namely, November 13, 1935, this estate was validly obligated to pay the sum of $1,500 to the receiver of this corporation. It is this claim which he here asserts.

The executors maintain that they should be compelled to pay only one-half of this sum, or $750. Since the inception of the obligation has been admitted, the burden of adducing a demon-

stration of total or partial exoneration obviously rests on those contending for such result.

In attempted compliance with this burden, they have shown that on December 11, 1935, an order was entered by the Maryland court reciting that an offer to compromise the liability at five dollars a share had been made on behalf of the holders of 151,340 shares, which offer the court deemed advantageous for the purpose of avoiding the expense and hazard of collection. It then continued:

" Ordered * * * that the Receiver notify all stockholders * * * of the above mentioned offer of settlement, by sending them by mail a copy of this order; and that if additional stockholders unite with those making the offer representative in character and sufficient in number to bring the amount offered the Receiver to at least $1,000,000 on or before December 30, 1935, through payment at the rate of $5.00 a share * * * then the Receiver will be authorized and directed to accept said offer of settlement in final satisfaction of statutory liability attributable to the stockholders represented by said deposits * * * ; and it is further

" Ordered that any stockholder who has not deposited ·* * * as aforesaid may at any time prior to January 3, 1936, deposit at the rate of 50% of the par value of his, her or its stock with the clerk of this Court as a tender in final settlement of his, her or its stock, the said deposit to be turned over by the clerk to the Receiver when an order approving said settlement shall have become final * * *; and it is further

" Ordered that after the said third day of January 1936, the Receiver shall immediately proceed to collect the full liability of stockholders in accordance with the order of this Court dated November 13, 1935."

By order dated January 6, 1936, the time for stockholders to avail themselves of this privilege of compromising their adjudicated liability of ten dollars per share by payment of five dollars per share, was extended until ten A. M. on January 13, 1936.

It has been testimonially established by a representative of the receiver that copies of the order of December 11, 1935, were duly mailed, as therein directed, to all stockholders on December 12, 1935, in post-paid wrappers, the copy in respect of the decedent being mailed to the address which he had supplied for the purpose, namely, 55 Berry street, Brooklyn, N. Y.; that each bore a return address; and that the copy sent to the decedent was not returned.

Testator's son testified that the address in question was the business address of the decedent; that upwards of thirty persons worked there and that he was in charge and that customarily all mail there delivered came to his attention and that he had never

received the notice. The individual in charge of the affairs of the estate on behalf of the corporate executor testified that it had never come to his attention and it was stipulated that the widow, who is the coexecutor, would have given like testimony had she been called.

The foregoing comprises the totality of the relevant portion of the record.

The accountants have displayed commendable diligence in the discovery and exhumation of decisions of courts of this and other jurisdictions relative to the effect of non-receipt of notices, a plethora of which are optimistically tendered as in support of their position that by reason of their asserted failure to receive the notice they are still at liberty to purchase immunity from their adjudicated liability at a fifty per cent discount.

The first decision upon which reliance is placed is *Burck* v. *Taylor* (152 U. S. 634). The question there litigated concerned the effect of the recording of an assignment of a contract where such act was not required by statute. The court held (p. 654) that such act was nugatory for the purpose of giving notice and that " if notice was essential to charge them, actual notice should have been given."

The decision in *Matter of Leterman, Bechter & Co.* (260 Fed. 543) was similar, and was attained on the authority of the precedent last noted. The concrete determination was that actual notice to a debtor was essential to perfect the rights of an assignee against him.

In *Haldane* v. *United States* (69 Fed. 819) the question involved related to the obligations of a successful bidder who was required to enter into the contract within ten days after the day on which he should be notified of the acceptance of his bid. The gist of the decision is found at page 822, where the court observes, " The doctrine is well established that, when a statute requires notice to be given to a person for the purpose of creating a liability, personal notice is intended unless some other form of notice is expressly authorized by the statute." It was accordingly held that the question of whether liability had been created depended on the factual issue of whether such personal notice had actually been given.

The facts and determination in *Steinhardt* v. *Bingham* (182 N. Y. 326) were identical in principle, the liability of the defendant being conditioned on his being supplied with specified information within a given time and such information having been mailed but not received.

The same result was attained in *Peabody* v. *Satterlee* (166 N. Y 174) in which it was determined that the liability of the insurer had not come into existence under a policy which required that the insured " shall render a statement " within a specified time where

such statement had not been received by the insurer during the limited period.

A related principle is applied in *Herter* v. *Mullen* (52 App. Div. 325) where a tenant was held liable by reason of holding over when the notice of surrender of the premises had not been received by the landlord in time.

In *Matter of Blumberg* (149 App. Div. 303) the question presented concerned the sufficiency of notice of justification of a surety. The statute required five days' notice. Such notice was given by mail to a non-resident and it was held insufficient and that personal service was requisite in the absence of statutory authorization to the contrary. The gist of the decision is found at page 307, and is to the effect that since the person served is, in substance, brought into court as a party by the notice, the statute effecting such exercise of jurisdiction over his rights is subject to a strict construction.

*McDermott* v. *Board of Police* (25 Barb. 635) held that service of notice of charges against a police officer must be personal, and *Rathbun* v. *Acker* (18 Barb. 393) and *City of Glens Falls* v. *Standard Oil Co.* (127 Misc. 104, 113) are authorities for the position that where a liability for street repairs is imposed upon a person within a specified time " after notice," such liability does not accrue until after the notice has actually been received by the person upon whom liability is sought to be imposed.

In *Nesbitt* v. *Morton* (124 Misc. 575) it was held that a thirty-day notice of the change of terms of a lease was not effective unless actually received.

The final precedent cited, which is emphasized as appearing " to be directly in point," is *Skinner* v. *Sullivan* (112 Misc. 365), which was a motion to set aside a judgment against executors in an action to enforce a stockholder's liability. The action had been instituted against the decedent who had died while it was still pending. The court directed its continuance against his executors, who had not been served and held that they might be served by a mailing of process to the attorneys for the parties. Such mailing was effected to the attorney for the decedent, who had never represented the executors. The latter resided in this State. It was held that insufficient jurisdiction had been obtained over the executors to warrant an adjudication of their liability for the assessment.

The foregoing comprise all of the precedents upon which reliance is placed to demonstrate that despite the fact that the orders of the Maryland court expressly denied the privilege to settle for less than 100 per cent of the " valid obligation " against them to any who

failed to make payment prior to January 13, 1936, the accountants nevertheless still possess such privilege. They are incapable of sustaining the burden thus imposed upon them.

When analyzed, a preponderant majority are classifiable as enunciating one or the other of two principles. The first is that where the initial creation of a liability is conditioned on notice, actual notice must be received by the person to be charged before such liability will be deemed to have come into existence, in the absence of some specification to the contrary, either in the law or in the instrument providing for the contingent creation of such liability. All of the cited cases with the exception of *Herter* v. *Mullen, Matter of Blumberg, McDermott* v. *Board of Police* and *Skinner* v. *Sullivan* fall into this class.

This principle has no present applicability. The notice here involved did not *create* any liability. Such liability had already been created by the adjudication contained in the order of November 13, 1935, since, as has expressly been stipulated, the assessment thereby made " became a *valid obligation against all of the stockholders* of record of said bank upon the date of the signing and entry of said order." Nothing remained to be done to mature the duty of these executors to pay the $1,500 assessed.

The second principle, which is illustrated by the decision in *Herter* v. *Mullen,* is that where a person possesses certain rights which may be terminated by notice either pursuant to stipulation of the contract or by law, the notice to terminate such rights must be personally served or received by the person in question in the absence of a specification in the contract or law authorizing the cancellation or termination of such right in some other manner.

This principle, also, possesses no present applicability. It might be relevant, if pursuant to the order of December 11, 1935, the executors had, prior to January 13, 1936, mailed to the receiver a payment on the basis of the bargain settlement figure and it had not been received by him by ten A. M. on that date. Under such circumstances, the principle might have been available to the receiver in a litigation seeking the collection of the total, unabated assessment.

The remaining three cases, *Matter of Blumberg, McDermott* v. *Metropolitan Police* and *Skinner* v. *Sullivan,* merely reaffirm the age-old principle that before a valid adjudication may be made affecting the personal rights or property of any individual, jurisdiction over him by some authorized method, consonant with his constitutional guaranties, must first be obtained.

The *Skinner* case, far from being " directly in point," is perhaps the most clearly inapplicable of the many cases cited. The issue

in that litigation was the liability of the estate for an assessment. In the present case, as has already been emphasized, the validity of the assessment by the order of November 13, 1935, and the fact that it " became a valid obligation against all of the stockholders of record," has expressly been stipulated.

Had the present executors seen fit so to do, they might have contested such validity or the enforcibility of the obligation under the laws of this State, as was done in this court under somewhat similar circumstances in *Matter of Cohen* (149 Misc. 765). They did not so elect but admitted the creation and initial enforcibility of the obligation, seeking to avail themselves of a conditional privilege to settle for less when, admittedly, they have not complied with the condition, in the face of the express stipulation in the same order which accorded the conditional privilege, that as to all who failed to comply with the condition " the receiver shall immediately proceed to collect the full liability * * * in accordance with the order * * * dated November 13, 1935."

The most which can be said for the order of December 11, 1935, as extended, is that it accorded the accountants one absolute and one conditional privilege. The former was that the receiver should send a copy of the order to all stockholders of record " by mail." The latter was that any stockholder might compromise his obligation by paying five dollars per share prior to January 13, 1936.

The uncontradicted evidence adduced at the hearing has convinced the court that the first gratuituous right extended by the court met with compliance and that the copy of the order was actually mailed as directed. The accountants did not comply with the condition attached to the second, wherefore it lapsed.

It is unquestionably unfortunate for them if the notice was not received. Perhaps it was not. Mail occasionally does go astray. Such events are, however, so extremely rare as to raise some inference by reason of customary experience that it was properly delivered and was mislaid after arrival by some one of the thirty-odd persons employed at the address. The question is, however, immaterial. The fact remains that, an admittedly valid obligation came into existence on November 13, 1935, to pay $1,500 and that nothing has been demonstrated which can have the effect of impairing or modifying it. The claim must, accordingly, be allowed, with costs.

Enter decree on notice in conformity herewith.